# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LEON G. HOWARD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 14-349-RGA-MPT |
| | ) | |
| CAROLYN COLVIN, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **REPORT AND RECOMMENDATION**

## I.    INTRODUCTION

Leon G. Howard ("plaintiff") filed this action pursuant to 42 U.S.C. § 1383(c)(3)

against Carolyn Colvin, Acting Commissioner of Social Security ("defendant"), on March

19, 2014.  Plaintiff seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final

decision by the Social Security Administration denying his claim for disability insurance

benefits ("DIB") under the Social Security Act ("SSA").[1]  Currently before the court are

the parties' cross motions for summary judgment.  For the reasons stated below, the

court will grant and deny in part plaintiff's motion for summary judgment, and grant and

---

[1] 42 U.S.C. §§ 401-434, 1381-83(f).

deny in part defendant's motion for summary judgment.

## II. JURISDICTION

Under 42 U.S.C. § 405(g), a district court has jurisdiction to review an
Administrative Law Judge's ("ALJ") decision once it becomes the final decision of the
Commissioner.[2] A decision of the Commissioner becomes final when the Appeals
Council either affirms the ALJ decision, denies review of the decision, or when the
claimant fails to appeal the decision within 60 days after an unfavorable ruling.[3]

In the instant matter, the Commissioner's decision became final when the
Appeals Council denied review of the ALJ's decision against plaintiff. Thus, this court
has jurisdiction to review the ALJ's decision.

## III. PROCEDURAL BACKGROUND

On March 29, 2010, plaintiff filed an application for DIB alleging disability as of
February 16, 2010. The claims were denied initially on October 26, 2010, and upon
reconsideration on February 24, 2011. Plaintiff then timely requested a review hearing
before an ALJ. A hearing before ALJ Melvin D. Benitz was held on April 10, 2012. The
ALJ denied disability status to plaintiff under the SSA on April 19, 2012. After the
denial, plaintiff requested review from the Appeals Council on May 16, 2012 which was
denied on September 24, 2013. On July 7, 2014 plaintiff moved for summary judgment

---

[2] 42 U.S.C. § 405(g) provides, "[a]ny individual, after any final decision of the
Commissioner of Social Security made after a hearing to which he was a party . . . may
obtain a review of such decision by a civil action . . . brought in the district court of the
United States for the judicial district in which the plaintiff resides."

[3] *See* 20 C.F.R. § 416.1455; *see also* 20 C.F.R. § 404.905.

and defendant cross-moved on August 22, 2014.

## IV. BACKGROUND

Plaintiff was forty-two years old at the onset of the alleged disability.  Plaintiff has a high school education and previously worked as an inventory clerk at a hospital, assistant manager of a hardware store, and a sales clerk.  His alleged disability is a result of "extreme fatigue and shortness of breath that often prevent him from performing even basic activities."[4]

### A. Medical Evidence

Plaintiff suffers from a wide variety of medical issues, but his overall compliant is that he experiences fatigue and shortness of breath, or dyspnea.[5]  None of his treating physicians have offered a specific diagnosis for his condition.[6]  Prior to the alleged onset date, plaintiff was diagnosed with Adult Onset Still's disease, Crohn's disease, and depression, among other diagnoses.[7]  The symptoms of fatigue and shortness of breath began in late 2009 and early 2010.[8]

Amir Quefatich, M.D. ("Dr. Quefatich") treated plaintiff in February 2010.[9]  With regard to dyspnea on exertion, Dr. Quefatich found multi-factored symptoms of asthma, muscle weakness, obesity, and deconditioning played a significant role.[10]  On a follow up visit for worsening symptoms, Dr. Quefatich found no evidence of significant lung

---

[4] D.I. 11 at 2.
[5] See D.I. 5 at 140; see also D.I. 11 at 2.
[6] D.I. 11 at 3.
[7] D.I. 5 at 494.
[8] Id. at 387, 427-38, 443.
[9] Id. at 427-36.
[10] Id. at 428.

3

infiltrations or effusions on a recent CAT scan, with PFTs showing only "mild obstructive airway disease without significant restriction or diffusion defect."[11] At a subsequent follow up visit, although the etiology of the dyspnea on exertion was unclear, Dr. Quefatich ruled out lung problems after a cardiopulmonary stress test.[12]

During the same time, plaintiff was treated by rheumatologist Ivonne Herrera, M.D. ("Dr. Herrera").[13] Before the disability onset date, Dr. Herrera treated plaintiff for joint pain.[14] Dr. Herrera noted plaintiff could not work, and developed "severe shortness of breath and feels exhausted with minimal activity."[15] Dr. Herrera further reported plaintiff did not improve with medication.[16] Ultimately, Dr. Herrera was unable to identify the etiology for plaintiff's symptoms and a specific diagnosis. Since she was unsure whether plaintiff should be evaluated by a rheumatologist or a pulmonary physician, plaintiff was referred to a specialist at Johns Hopkins Myositis Center ("Johns Hopkins").[17]

On May 28, 2010, plaintiff began treating with Thomas Lloyd, M.D. ("Dr. Lloyd") at Johns Hopkins.[18] Dr. Lloyd noted that six months prior, plaintiff experienced severe bronchitis which progressed to "severe dyspnea on exertion with only walking, for example 100 feet to his mailbox," with the shortness of breath becoming significantly

---

[11] *Id.* at 429.
[12] *Id.* at 432.
[13] *Id.* at 445-47.
[14] *Id.* at 451.
[15] *Id.* at 443.
[16] *Id.*
[17] *Id.* at 444, 485, 591.
[18] *Id.* at 485.

4

worse in February 2010.[19] Dr. Lloyd reported plaintiff had seen a number of rheumatologists and pulmonologists in Delaware who were unable to determine the etiology of his dyspnea.[20] Additionally, Dr. Lloyd noted occasional arm and leg cramping and difficulty rising from a chair, getting off the floor, climbing steps,[21] and a history of hand tremors.[22] Dr. Lloyd concluded since plaintiff's muscle strength was normal with no evidence of an irritable myopathy, an underlying diagnosis of myositis was "very unlikely."[23] Since Dr. Lloyd was unable to ascertain the etiology of plaintiff's severe dyspnea on exertion, he recommended an evaluation by a rheumatologist.[24]

Plaintiff was referred to Carol Ziminski, M.D. ("Dr. Ziminski"), a rheumatologist at Good Samaritan Hospital.[25] Dr. Ziminski examined plaintiff on June 16, 2010 and found no evidence of an underlying cardiopulmonary disease, and no joint symptomatology for any rheumatological condition.[26] During a follow up visit on September 23, 2010, Dr. Ziminski noted no signs of myopathy and was unable to diagnose a specific rheumatic disease.[27]

On August 12, 2010 plaintiff was evaluated by Beshara Helou, M.D. ("Dr. Helou") at Delaware Disability Determination Service.[28] At that time, plaintiff's main complaints

---

[19] Id.
[20] Id.
[21] Id.
[22] Id. at 486.
[23] Id. at 487.
[24] Id.
[25] Id. at 487, 559, 561.
[26] Id. at 561.
[27] Id. at 556-57.
[28] Id. at 494.

5

were severe fatigue and shortness of breath which prohibited work.[29] Regarding fatigue, Dr. Helou recorded that plaintiff suffered "[s]evere deconditioning . . . disproportionate to his workup."[30] Dr. Helou found his pulmonary and cardiovascular status stable and questioned whether an underlying collagen disease process was causing fatigue.[31]

Plaintiff returned to Dr. Lloyd on October 22, 2010, on the recommendation of Dr. Theresa Michelle who diagnosed the dyspnea as probably caused by a neurological problem.[32] At this appointment, plaintiff stated his symptoms stabilized over the last four months.[33] Dr. Lloyd assessed that the most likely cause was an unclear neurogenic etiology for diaphragmatic weakness.[34] An electromyography ("EMG") test and muscle biopsy were performed.[35] Based on the results of the EMG, Dr. Lloyd concluded that the dyspnea on exertion was not caused by a nerve or muscle problem.[36] The muscle biopsy revealed minor myopathy.[37]

Dr. Lloyd referred plaintiff to Noah Lechtzin, M.D. ("Dr. Lechtzin"), a pulmonologist at Johns Hopkins University.[38] Dr. Lechtzin evaluated plaintiff on May 9, 2011 and found that "[w]hile no exact diagnosis has been confirmed, he has biopsy evidence of myopathy and it is my opinion that he has respiratory muscle weakness

---

[29] Id.
[30] Id. at 496.
[31] Id.
[32] Id. at 522.
[33] Id.
[34] Id.
[35] Id. at 580-81, 587.
[36] Id. at 582.
[37] Id. at 642.
[38] Id. at 578.

6

contributing to his symptoms," which would not improve within the next twelve months.[39] Dr. Lechtzin further concluded some mild diaphragmatic weakness may continue.[40]

Plaintiff saw Fran D. Kendall, M.D. ("Dr. Kendall") on February 7, 2012 for a consultative exam.[41] Dr. Kendall noted plaintiff suffered from "weakness, exercise intolerance and fatigue" for two years.[42] He also noted plaintiff's previous tests, including the EMG which showed "mild, non irritable myopathy," disclosed no clear etiology.[43] Dr. Kendall recommended plaintiff follow up with Johns Hopkins regarding residual muscle weakness and offered a referral to Baylor Genetics Laboratory for mitochondrial enzymology and to Dr. Haller for glycolytic enzyme studies.[44]

Finally, plaintiff was evaluated by Payam Sotanzadeh, M.D. and Stephen Reich, M.D. at the University of Maryland.[45] The doctors concluded the previous biopsy of February 18, 2011 indicated mild, but not abnormal myopathy.[46] They determined fatigue was limited to plaintiff's lower extremities with none evidenced in the upper extremities,[47] since "he was able to do 20 sit-ups from a sitting position without using hands to a standing position in less than 60 seconds."[48] Further, plaintiff demonstrated no fatigue when counting to 40.[49]

---

[39] *Id.* at 640.
[40] *Id.* at 642.
[41] *Id.* at 706-09.
[42] *Id.* at 708.
[43] *Id.*
[44] *Id.* at 409.
[45] *Id.* at 847-60.
[46] *Id.* at 854-55.
[47] *Id.* at 855-57.
[48] *Id.* at 857.
[49] *Id.*

7

## B.    Physical Residual Functional Capacity Evaluation

A physical residual functional capacity evaluation ("RFC") was completed by

Gurcharan Singh, M.D. ("Dr. Singh"), a state agency physician, on February 16, 2010.[50]

Dr. Singh determined plaintiff could occasionally lift and/or carry twenty pounds and

frequently lift and/or carry ten pounds, stand and/or walk for six hours and sit for a total

of six hours in an eight hour workday, and push/pull without limitation.[51]  Dr. Singh

based his conclusions on Dr. Helou's August 12, 2010 exam which "found claimant in

no apparent distress."[52]  Dr. Singh further noted plaintiff could occasionally climb, stoop,

kneel, crouch and crawl, but should not balance, with no limits regarding manipulation,

vision, or communication.[53]  Lastly, Dr. Singh found plaintiff should avoid concentrated

exposure to extreme cold, extreme heat, hazards, and fumes, odors, dusts, gases, poor

ventilation, and the like.[54]

## C.    Physical Capacities Evaluations

Plaintiff underwent several physical capacities evaluations by his treating

physicians.  On April 7, 2011, his primary care physician, Harry Anthony, M.D. ("Dr.

Anthony"), concluded plaintiff could sit for four hours and stand/walk for two hours a

work day with alternate sitting and standing, and could not perform fine hand

manipulation or repetitive hand motion tasks, such as typing, due to tremors.[55]  He

further noted plaintiff could occasionally lift up to ten pounds, and never climb, balance,

---

[50] *Id.* at 542-47.
[51] *Id.*
[52] *Id.*
[53] *Id.* at 544-45.
[54] *Id.* at 545.
[55] *Id.* at 596.

8

kneel, crouch, or crawl, but could occasionally stoop or reach above shoulder level.[56]
Dr. Anthony diagnosed plaintiff as suffering from disabling fatigue and disabling pain.[57]

Dr. Herrera performed a physical capacities evaluation on April 12, 2011, finding
plaintiff suffered from severe fatigue.[58] Unlike Dr. Anthony, however, Dr. Herrera did
not conclude plaintiff's pain was disabling.[59] Dr. Herrera determined plaintiff could
occasionally lift up to ten pounds, sit for two hours, and stand for one hour during an
eight hour work day.[60] She recommended plaintiff never climb, balance, kneel, crouch,
crawl or reach above shoulder level, and only occasionally stoop.[61] In a later evaluation
on January 23, 2012, Dr. Herrera reported plaintiff could occasionally lift up to twenty
pounds and occasionally climb, stoop, kneel, crouch, crawl or reach above shoulder
level, but never balance.[62] He also determined plaintiff continued to experience
disabling fatigue.[63]

Dr. Lechtzin performed a physical capacities exam on December 20. 2011,
finding plaintiff experienced disabling fatigue.[64] Similar to Dr. Herrera, Dr. Lechtzin did
not find that the pain was disabling.[65] He recommended plaintiff could lift/carry up to
five pounds occasionally, never climb, kneel, crouch, or crawl, and occasionally

---

[56] *Id.* at 597.
[57] *Id.*
[58] *Id.* at 604.
[59] *Id.* at 605.
[60] *Id.*
[61] *Id.* at 604.
[62] *Id.* at 682.
[63] *Id.*
[64] *Id.* at 672.
[65] *Id.* at 673.

9

balance, stoop, or reach above shoulder level.[66] He found plaintiff could stand/walk for one hour during an eight hour work day, but could use his hands for repetitive motion and fine manipulation.[67] Interestingly, during a subsequent physical capacities evaluation on February 16, 2012 Dr. Lechtzin noted plaintiff could occasionally lift up to twenty ponds, but continued having disabling fatigue.[68]

## D. Administrative Law Hearing

At the hearing before the ALJ on April 10, 2012, plaintiff was represented by counsel and testified. An independent vocational expert ("VE") also testified.

### 1. Testimony of Plaintiff

Plaintiff testified that he left his job as an assistant manager at Ace Hardware store in February 2010 because of fatigue which required him to rest on a regular basis.[69] To illustrate his fatigue, he detailed a typical day as arising at 6:00 a.m. and preparing his children for the school bus by 7:00 a.m.[70] Thereafter, he rests until 10:00 a.m. and uses his laptop while reclining.[71]

If plaintiff does not rest, he experiences shaking which impairs grasping, manipulating objects, and fine motor skills.[72] He is able to drive, but limits his travel to twice a week and short distances, such as to the grocery store.[73]

Plaintiff further testified about the treatment for fatigue and pain and claimed

---

[66] *Id.* at 672.
[67] *Id.* at 671.
[68] *Id.* at 752.
[69] *Id.* at 122-23.
[70] *Id.* at 124-25.
[71] *Id.* at 125.
[72] *Id.* at 125, 130-31.
[73] *Id.* at 126.

10

difficulty with concentration and depression.[74] He uses a microwave or slow cooker to prepare dinner and does laundry twice a week.[75]

Plaintiff enjoys a dinner out about once a month, but such outings completely tire him.[76] He attends a weekly forty-five minute church service which requires a rest/recovery period afterward.[77] He can only walk about 100 feet before he starts to experience shortness of breath.[78]

## 2. Testimony of Vocation Expert

During the hearing, the ALJ consulted a VE, Tony Melanson, who classified plaintiff's past work as an inventory clerk as light and semiskilled and work as an assistant manager of a hardware store as medium and skilled.[79] Melanson testified that plaintiff's sales skills were transferrable to light jobs, such as a sales clerk position, but he had no transferable computer skills for this sedentary position.[80]

The ALJ asked the VE to consider a hypothetical person who was forty-two years old at the alleged onset date, has a high school education, a work history, and symptoms similar to plaintiff.[81] According to the VE, the only position available was as an evening security monitor which is a sedentary and unskilled job.[82] There are approximately 200 of those positions locally and 75,000 in the national economy.[83] The

[74] *Id.* at 127-30, 138-39.
[75] *Id.* at 132-33.
[76] *Id.* at 134.
[77] *Id.* at 134-35.
[78] *Id.* at 135.
[79] *Id.* at 146.
[80] *Id.* at 146-47.
[81] *Id.* at 147-48.
[82] *Id.* at 148-49.
[83] *Id.* at 149.

11

ALJ then posed an alternative hypothetical where the individual could occasionally

perform fine manipulation and dexterity.[84] The VE testified such a person could work as

an order clerk or as an addresser of which there are 125 jobs in the local region and

60,000 in the national economy.[85] The VE also testified plaintiff could not return to his

past employment.[86]

## E. Findings of the ALJ

On April 19, 2012, the ALJ issued the following findings:

1. The claimant meets the insured status requirements of the Social
Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since
February 16, 2010, the alleged onset date (20 CFR 404.1571 et seq.).

3. The claimant has the following severe impairments: degenerative disc
disease and/or arthritis and/or idiopathic myopathy, and depression (20
CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of
impairments that meets or medically equals the severity of one of the
listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR
404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds
that the claimant has the residual functional capacity to perform sedentary
work as defined in 20 CFR 404.1567(a), but needs jobs that are simple,
routine, and unskilled, SVP 1 or 2, with low stress, low concentration, and
low memory, defined as jobs that are one or two step tasks, no production
rate work, little or no decision-making, changes in the work setting, or
judgment to perform the work, subject to usual and customary breaks
during an eight-hour workday, occasional interaction with the public,
coworkers, and supervisors, jobs that allow him to deal with things rather
than people, is able to lift 10 pounds occasionally and lesser amounts
frequently, could sit for 30 minutes and stand for 10 minutes, consistently,

---

[84] Id.
[85] Id.
[86] Id. at 150.

on an alternate basis, or at will, over an eight hour workday, five days a week, and would need to avoid heights and hazardous machinery, temperature and humidity extremes, stair climbing, ropes, and ladders, needs jobs that require only occasional fine dexterity and manipulation due to occasional tremors, and jobs that allow him to avoid odors, gasses, fumes, dust and like substances due to mild COPD.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on September 13, 1967 and was 42 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82041 and 20 CFR 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 16, 2010, through the date of the decision (20 CFR 404.1520(g)).[87]

## V. Standard of Review

### A. Motion for Summary Judgment

Both parties moved for summary judgment. In determining the appropriateness

of summary judgment, the court must "review the record as a whole, 'draw[ing] all

reasonable inferences in favor of the non-moving party[,]' but [refraining from] weighing

---

[87] D.I. 5 at 101.

13

the evidence or making credibility determinations."[88]  If "there is no genuine issue as to

any material fact and the movant is entitled to judgment as a matter of law," summary

judgment is appropriate.[89]

This standard does not change merely because there are cross-motions for

summary judgment.[90]  Cross-motions for summary judgment:

> are no more than a claim by each side that it alone is entitled to
> summary judgment, and the making of such inherently
> contradictory claims does not constitute an agreement that if one is
> rejected the other is necessarily justified or that the losing party
> waives judicial consideration and determination whether genuine
> issues of material fact exist.[91]

"The filing of cross-motions for summary judgment does not require the court to grant

summary judgment for either party."[92]

## B.    Review of the ALJ's Findings

Pursuant to 42 U.S.C. § 405(g), the court may reverse the Commissioner's final

determination only if the ALJ did not apply the proper legal standards, or the record did

not contain substantial evidence to support the ALJ's decision.  The Commissioner's

factual decisions are upheld if supported by substantial evidence.[93]  Substantial

evidence means less than a preponderance, but more than a mere scintilla of

---

[88] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation omitted).

[89] *See Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (quoting FED. R. CIV. P. 56 (C)).

[90] *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987).

[91] *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).

[92] *Krupa v. New Castle Cnty.*, 732 F. Supp. 497, 505 (D. Del. 1990).

[93] *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190 (3d Cir. 1986).

14

evidence.[94] As the United States Supreme Court has found, substantial evidence "does not mean a large or significant amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[95]

In determining whether substantial evidence supports the Commissioner's findings, the court may not undertake a de novo review of the decision nor re-weigh the record evidence.[96] The court's review is limited to the evidence that was actually presented to the ALJ.[97] The Third Circuit has explained that:

[a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence, particularly certain types of evidence (e.g., evidence offered by treating physicians) or if it really constitutes not evidence but mere conclusion.[98]

Thus, the inquiry is not whether the court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable.[99] Even if the court would have decided the case differently, it must defer to and affirm the ALJ so long as the decision is supported by substantial evidence.[100]

Where review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision.[101] In SEC v. Chenery Corp., the United States Supreme Court

---

[94] Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).

[95] Pierce v. Underwood, 487 U.S. 552, 565 (1988).

[96] Monsour, 806 F.2d at 1190-91.

[97] Matthews v. Apfel, 239 F.3d 589, 593-95 (3d Cir. 2001).

[98] Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).

[99] Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

[100] Monsour, 806 F.2d at 1190-91.

[101] Hansford v. Astrue, 805 F. Supp. 2d 140, 144-45 (W.D. Pa. 2011).

15

found that:

> [a] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis.[102]

The Third Circuit has recognized the applicability of this finding in the social security disability context.[103] This court's review is limited to the four corners of the ALJ's decision.[104] In social security cases, the substantial evidence standard applies to motions for summary judgment brought pursuant to FED. R. CIV. P. 56(c).[105]

## VI. DISCUSSION

### A. Disability Determination

Title II of the Social Security Act, 42 U.S.C. § 423(a)(1)(D), "provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability."[106] In order to qualify for DIB, the claimant must establish he was disabled prior to the date he was last insured.[107] A "disability" is defined as the inability to do any substantial gainful activity because of any medically determinable physical or mental impairment, which either could result in death, or has lasted or can be expected to last for a continuous period of at least twelve

---

[102] 332 U.S. 194, 196 (1947).

[103] *Fargnoli v. Massanari*, 247 F.3d 34, 44 n.7 (3d Cir. 2001).

[104] *Cefalu v. Barnhart*, 387 F. Supp. 2d 486, 491 (W.D. Pa. 2005).

[105] *See Woody v. Sec'y of the Dep't of Health & Human Servs.*, 859 F.2d 1156, 1159 (3d Cir. 1988).

[106] *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

[107] 20 C.F.R. § 404.131.

16

months.[108]  To be disabled, the severity of the impairment must prevent return to previous work, and based on age, education, and work experience, restrict "any other kind of substantial gainful work which exists in the national economy."[109]

In determining whether a person is disabled, the Commissioner is required to perform a five-step sequential analysis.[110]  If a finding of disability can be made at any point in the sequential analysis, the Commissioner will not review the claim further.[111]  At step one, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity.  If the claimant is so engaged, a finding of non-disabled is required.[112]  If the claimant is not, then step two requires the Commissioner to determine whether the claimant is suffering from severe impairment or a combination of impairments that is severe.  If the claimant is not suffering from either, a finding of non-disabled is required.[113]

If the claimant's impairments are severe, the Commissioner, at step three, compares the claimant's impairments to a list of impairments (the "listing") that are presumed severe enough to preclude any gainful work.[114]  When a claimant's impairment or its equivalent matches an impairment in the listing, the claimant is presumed disabled.[115]  If a claimant's impairment, either singularly or in combination,

---

[108] 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3).

[109] 42 U.S.C. § 423(d)(2)(A); Barnhart v. Thomas, 540 U.S. 20, 21-22 (2003).

[110] 20 C.F.R. § 404.1520(a)(4).

[111] 20 C.F.R. § 404.1520(a)(4).

[112] 20 C.F.R. § 404.1520(a)(4)(i).

[113] 20 C.F.R. § 404.1520(a)(4)(ii).

[114] 20 C.F.R. § 404.1520(a)(4)(iii); see also Plummer v. Apfel, 186 F.3d 422, 427-28 (3d Cir. 1999).

[115] 20 C.F.R. § 404.1520(a)(4)(iii).

17

fails to meet or medically equal any listing, the analysis continues to steps four and five.[116] At step four, the Commissioner determines whether the claimant retains the RFC to perform her past relevant work.[117] A claimant's RFC is "that which an individual is still able to do despite the limitations caused by [his] impairment(s)."[118] "The claimant bears the burden of demonstrating an inability to return to [his] past relevant work."[119]

If the claimant is unable to return to his past relevant work, step five requires the Commissioner to determine whether the claimant's impairments preclude him from adjusting to any other available work.[120] At this last step, the burden rests with the Commissioner to show the claimant is capable of performing other available work existing in significant national numbers and consistent with the claimant's medical impairments, age, education, past work experience, and RFC before denying disability benefits.[121] In making this determination, the ALJ must analyze the cumulative effect of all the claimant's impairments, and often seeks the assistance of a VE.[122]

### 1. VE Testimony

The ALJ considered plaintiff's need for simple, routine, unskilled, low stress jobs, requiring only occasional fine dexterity and manipulation, with an alternating sit/stand option or at will, and limitations on heights, hazardous machinery, temperature and

---

[116] 20 C.F.R. § 404.1520(e).

[117] 20 C.F.R. § 404.1520(a)(4)(iv); see also Plummer, 186 F.3d at 428.

[118] Fargnoli, 247 F.3d at 40 (quoting Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 121 (3d Cir. 2000)).

[119] Plummer, 186 F.3d at 428.

[120] 20 C.F.R. § 404.1520(g) (mandating finding of non-disability when claimant can adjust to other work); see also Plummer, 186 F.3d at 428.

[121] Plummer, 186 F.3d at 428.

[122] See id.

18

humidity extremes, odors, gases, fumes, dust, bending, and climbing stairs, ropes, and ladders.[123] Although, VE testified plaintiff was capable of working as an off-hours addresser and surveillance security monitor, plaintiff contends he is precluded from performing both jobs. Plaintiff argues off-hours addresser is precluded because he is restricted to simple, routine, and unskilled jobs requiring only occasional fine dexterity and hand manipulation.[124] Plaintiff argues a surveillance security monitor exceeds his restriction to simple, routine, and unskilled work.[125]

The final step of the disability analysis requires the ALJ to determine whether a claimant can perform work existing in the national economy.[126] The SSA relies on the Dictionary of Occupational Titles ("DOT") for specific requirements of each position.[127] Under the regulations, an ALJ is encouraged to use the expertise of an VE in deciding a claimant's occupational capabilities.[128] In making the determination, job requirements from the DOT and VE testimony are compared to the claimant's residual functional capacity, age, education, and work experience to assess whether a claimant is able to perform that occupation. An ALJ's finding that the claimant can perform employment existing in the national economy must be supported by substantial evidence.[129] A minimal number of jobs of a particular type existing nationally is sufficient to

---

[123] *Id.*
[124] D.I. 11 at 5-8.
[125] *Id.*
[126] 20 C.F.R. § 404.1520(g).
[127] SSR 00-4p.
[128] 20 C.F.R.§ 404.1566(e).
[129] 20 C.F.R. § 404.1520(g); SSR 00-4p.

19

demonstrate "that [such work] exists in the national economy."[130]

ALJ found plaintiff able to perform "simple, routine, and unskilled" work catorgorized as a SVP one or two, that is "low stress, low concentration, and low memory," and limited to "one or two step tasks" which require little or no decision-making and judgment.[131] The ALJ further recognized plaintiff was limited to "occasional fine dexterity and manipulation."[132]

### Off-Hours Addresser

Plaintiff argues off-hours addresser is precluded because he is restricted to simple, routine, and unskilled jobs requiring only occasional fine dexterity and hand manipulation.[133] The restriction of simple and routine work does not preclude employment in this position, but the restriction of jobs requiring only *occasional* fine dexterity and hand manipulation does preclude this job.

The restriction of simple and routine work does not preclude plaintiff from an addresser position. Plaintiff can perform level two work. An addresser is a level two reasoning occupation, which requires "commonsense understanding to carry out detailed but uninvolved written or oral instructions; to deal with problems involving a few concrete variables from standardized situations."[134] *Jones v. Astrue* held a VE's recommendation of a level two reasoning job was not contradicted by a claimant's need

---

[130] *Craigie v. Bowen*, 835 F.2d 56, 58 (3d Cir.1987) (citing *Dumas v. Schweiker*, 712 F.2d 1545 (2d Cir.1983)).
[131] D.I. 5 at 103.
[132] *Id.*
[133] D.I. 11 at 7-8.
[134] *Id.*

20

for "simple, repetitive tasks."[135] The Third Circuit recognizes that a level two reasoning position is consistent with simple, routine, and repetitive work.[136] Plaintiff's limitations for simple, unskilled work are not incongruous with level two reasoning occupations. However, plaintiff's physical limitations preclude this position.

The DOT description of an addresser indicates the position is a SVP of two and provides: "addresses by hand or type writer, envelopes, cards, advertising literature, packages, and similar items for mailing. May sort mail."[137]

The primary task to address an envelop by hand or typewriter demands constant hand manipulation, dexterity, and ease of hand movement. It requires the ability to continually grasp a pen and write or type an address on a keyboard, affix a label to an package, stuff envelops, and sort mail. Because plaintiff is limited to *occasional* fine dexterity and hand manipulation, in light of the ALJ findings, the job requirements of addresser exceed plaintiff's abilities.

### Surveillance Security Monitor

Plaintiff asserts his limitation to SVP one or two and need for simple and unskilled work preclude this position.[138] A surveillance system monitor is classified by the DOT as unskilled with a level three reasoning.[139] The DOT lists the maximum requirements of occupations, however, a VE may testify about the specific requirements for a particular job.[140] Social Security Ruling 00-4p states that the "Commissioner's

---

[135] *Jones v. Astrue,* 570 F. Supp. 2d 708, 716 (3rd Cir. 2008).

[136] *Money v. Barnhart,* 91 Fed. App'x 210, 215 (3d Cir. 2004).

[137] *See* DOT code 209.587-010.

[138] D.I. 11 at 5-7.

[139] *See* DOT code 379.367-010.

[140] *Id.*

21

regulatory definitions of skill levels are controlling. Therefore, it would be inconsistent with the Commissioner's regulations to rely on maximum reasoning levels as defined by the DOT to argue that the mental demands of surveillance system monitor exceed those for simple unskilled work."[141] Nevertheless, an ALJ must address and resolve any material inconsistencies or conflicts between the DOT descriptions and a VE's testimony; the failure to do so may necessitate remand.[142] SSA policy memo 09-2139 provides the ALJs should consider ratings that may appear to conflict with a claimant's RFC and the cited occupation "for example, an occupation with a GED reasoning level of 3 or higher for a claimant who is limited to performing simple, routine or unskilled tasks."[143]

In the instant matter, the ALJ did not resolve conflicts between the DOT descriptions and the VE's testimony, requiring remand.

### Other Inadequacies Asserted

Plaintiff claims the ALJ was not specific as to the frequency needed to alternate sitting and standing. Plaintiff is incorrect. The ALJ found plaintiff "could sit for 30 minutes and stand for 10 minutes, consistently, or on an alternate basis or at will, over an eight hour workday, five days of week."[144] Plaintiff further argues that the ALJ's hypothetical question to the VE was confusing because it allowed for sitting or standing, "on an alternate basis, . . . **or** at will."[145] The record does not substantiate any VE

---

[141] 20 C.F.R. §§ 404.1598(a), 416.968(a); *see also Green v. Astrue*, No. Civ. A. 10-468, 2010 WL 4929082, at *5 (W.D. Pa. Nov. 30, 2010).

[142] *Boone v. Barnhart*, 353 F.3d 203, 206 (3d Cir. 2004).

[143] SSA 09-2139 (citing POMS DI 25015.030).

[144] D.I. 5 at 103.

[145] D.I. 11 at 8.

22

confusion. The VE did not hesitate in his response. Moreover, plaintiff failed to clarify the ALJ's question or VE's answer.

Plaintiff also contends whether the VE identified jobs that are available on a full time basis, taking issue with the words "off hours" and "monitoring work, maybe in the evening hours." Plaintiff fails to develop this claim, never citing why off hours or evening work would not be full-time. Plaintiff again failed to seek clarification from the VE or ALJ regarding this issue.

## 2.    Weight Accorded to Medical Evidence Provided by Physicians

Plaintiff argues the ALJ failed to comply with regulations in weighing the medical evidence. Only the ALJ, not a physician, makes the ultimate disability and RFC determinations.[146] No medical opinion, even a treating physician's opinion, is binding on the ALJ.[147] The ALJ prescribes weight to a medical opinion according to the medical evidence submitted, including findings on examination and the extent of the treatment relationship, consistency in the record, specialization of the physicians, and other factors.[148] Controlling weight may be given to a treating source if the medical opinion is well-supported by clinical and laboratory diagnostics and not inconsistent with the record evidence.[149] When conflicting medical conclusions exist, "the ALJ is not only entitled but required to choose between them."[150] The ALJ cannot reject evidence for no reason, and must explain why evidence has been discounted.[151]

---

[146] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

[147] *Brown v. Astrue*, 649 F.3d 193, 197 (3d Cir. 2011).

[148] 20 C.F.R. § 404.1527.

[149] SSA 96-2p.

[150] *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

[151] *Id.* at 706-07.

23

In this matter, the ALJ afforded less weight to Drs. Herrara and Lechtzin's opinions because they were not supported by medical evidence and/or consistent with the record as a whole.[152]

The ALJ found Dr. Herrara's opinion was primarily based on plaintiff's subjective complaints and unsubstantiated by medical evidence.[153] According to Dr. Herrara, plaintiff's inability to work was "per patient."[154] In 2011, Dr. Herrara's records noted that overall plaintiff was doing well with joint pain controlled on medication. Dr. Herrara specifically reported plaintiff "wants me to support him for his disability, but I do not know why he was [sic] his symptoms and I do not know how to treat him for fatigue and shortness of breath."[155] In 2012, he observed that plaintiff's fatigue was mostly resolved, and was unable to discern clear etiology for plaintiff's condition.[156]

Dr. Lechtzin's medical opinion changed between 2011 to 2012 without justification or any indication of additional or worsening clinical issues to substantiate the modification of plaintiff's sit/stand restrictions.[157] Dr. Lechtzin performed multiple diagnostic tests: x-rays, pulmonary function studies, and chest and lung exams finding no clear etiology for plaintiff's fatigue.[158] Therefore, the ALJ rejected Dr. Lechtzin's conclusion that plaintiff suffered from disabling fatigue and could not sit/stand for more than one hour in an eight hour work day.[159]

---

[152] D.I. 5 at 108.
[153] Id. at 109.
[154] Id.
[155] Id.
[156] Id. at 688, 691, 757, 839.
[157] Id. at 109.
[158] Id. at 109-10.
[159] Id.

24

The ALJ accorded more weight to Dr. Singh's opinion, to the extent the opinion "was consistent with the evidence on the record."[160] The record indicates plaintiff's medical impairment was "expected to produce some degree of fatigue, pain and discomfort that would limit him to a sedentary exertional level."[161] The ALJ rejected Dr. Singh's opinion that plaintiff does not have severe mental impairment because Dr. Lamb, who examined and treated the plaintiff, found this condition existed, which was supported by the medical evidence.[162]

Ultimately, the ALJ weighs the medical opinions of record and resolves conflicts.[163] If the evidence would allow a reasonable mind to reach the same conclusion as the ALJ, then the ALJ's decision is supported by substantial evidence and must be sustained.[164] In this instance, the ALJ's rationale is supported by substantial evidence.

### 3. Plaintiff's Subjective Complaints

The ALJ found plaintiff's complaints "concerning the intensity, persistence and limiting effects of [his] symptoms . . . not credible to the extent" they were inconsistent with the RFC assessment.[165] Plaintiff reported constant, severe, fatigue, and pain and joint stiffness. The ALJ found the medical evidence from treating sources demonstrated plaintiff's symptoms were attributed mostly to obesity and deconditioning,

---

[160] *Id.* at 110.
[161] *Id.*
[162] *Id.*
[163] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).
[164] *Id.*
[165] D.I. 5 at 105.

with moderate joint pain controlled on medication, and the fatigue resolved.[166]  The ALJ further determined the medical evidence did not substantiate disabling hand tremors because plaintiff testified he did not need medication for the tremors.[167]  The ALJ accounted for plaintiff's subjective complaints that were supported by the record, as evidenced by the RFC assessment in Finding 5.[168]

## VII.  ORDER AND RECOMMENDED DISPOSITION

For the reasons contained herein, it is recommended that:

(1) Plaintiff's motion for summary judgment (D.I. 10) be GRANTED in part, and DENIED in part.

(2) Defendant's cross-motion for summary judgment (D.I. 15) be GRANTED in part, and DENIED in part.

(3) The matter be remanded in part in further consideration consistent with this opinion.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), FED. R. CIV. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within ten (10) days after being served with a copy of this Report and Recommendation.

The parties are directed to the Court's Standing Order in Non-Pro Se matters for Objections Filed under FED. R. CIV. 72, dated October 9, 2013, a copy of which is available on the Court's website, www.ded.uscourts.gov.

_____

[166] *Id.* at 105, 106, 666, 688, 757, 839.
[167] *Id.* at 104.
[168] *Id.*